[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a declaratory judgment action by the plaintiff, Citytrust, as trustee under the will of Andres M. Cooper, deceased, to obtain a construction of certain language in article third of decedent's will. The Chase Manhattan Bank of Connecticut has been substituted as party plaintiff. There are nineteen defendants, thirteen of whom failed to file an appearance, and two of whom appeared but failed to plead.[1] Defendants Jean Farmer Davis, Bette C. Scott, Donnald N. Cooper and Bruce R. Cooper appeared and filed answers. Jean Farmer Davis was subsequently defaulted for failure to revise her answer in accordance with a request to revise.
The decedent died on July 21, 1926, leaving a will dated January 11, 1924, which was admitted to probate by the Probate Court for the District of Bridgeport on July 28, 1926. Paragraph I of article third of the will establishes a trust for the benefit CT Page 9481 of decedent's widow, Sara Jarrett Cooper, and other persons, which trust was to terminate on the death of his widow. Sara died on November 23, 1952. The decedent left no issue.
Paragraphs II and III of article third provide that upon the death of Sara, the remainder of the estate was to be held in trust "during a trust term to be measured by the duration of the life of my said sister, Mary A. Cooper, and my wife's niece, Elizabeth Jarrett Forbus [subsequently, Elizabeth J. Buchtenkirk], that is to say, on the termination of the last surviving of said two lives, the trust term shall terminate. . . ." Mary A. Cooper died prior to 1955. Elizabeth Jarrett Forbus died on June 23, 1987.
Paragraph II, subparagraph (b), section (5) of the will contains the language which is at issue and states in relevant part:
 (5) on the termination of the trust to pay or transfer in money or in kind all the capital of the trust estate, together with any undistributed income, to the following named persons or classes of persons then living in the following proportions, viz: . . . one part to CARRIE R. COOPER, widow of my brother, THOMAS R. COOPER, if she be then living, but if she be deceased at that time, then such part shall be further held in trust by said The Bridgeport Trust Company as Trustee,[2]
with the power to hold, manage, invest and reinvest the same from time to time as may be necessary, and to collect the income and after first deducting all expenses attendant upon the execution of the trust to dispose of the income and principal thereof as follows, namely, during the lifetime of my niece, JANET S. COOPER, to pay the entire net income to her and at her death to pay the principal to the then living lineal descendants of my brother, THOMAS R. COOPER, per stirpes; . . . (Emphasis added.)
This part of the trust is referred to as the "Thomas R. Cooper Part." On the date the trust terminated, that is, on June 23, 1987 (when Elizabeth Jarrett Forbus died), both Carrie R. Cooper, who had died prior to 1964, and Janet S. Cooper [subsequently Janet Cooper Farmer], who had died on July 1, 1964, were already deceased and therefore received nothing from the will.
The plaintiff poses various questions to the court, the resolution of which requires interpretation of the phrase "then living" underlined above. The questions are as follows: CT Page 9482
 "(a) Are the then living lineal descendants of Thomas R. Cooper who are entitled to participate in the distribution of the Thomas R. Cooper Part to be determined as of the time of the death of Janet Cooper Farmer on July 1, 1964?"
 "(b) Are the then living lineal descendants of Thomas R. Cooper who are entitled to participate in the distribution of the Thomas R. Cooper Part to be determined as of the time of the death of Elizabeth J. Buchtenkirk on June 23, 1987?"
 "(c) If the answer to Question (b) is in the affirmative, is the per stirpital division among the lineal descendants of Thomas R. Cooper required by said Section (5) to take place among the first generation of Thomas R. Cooper's lineal descendants, which are his children, none of whom are now living, so that the Thomas R. Cooper Part is divided into five equal subparts, each of which is then to be divided among, and distributed to, the respective lineal descendant (living on June 23, 1987) of the children of Thomas R. Cooper?"
 "(d) If the answer to Question (b) is in the affirmative, is the per stirpital division among the lineal descendants of Thomas R. Cooper required by said Section (5) to take place among the first generation of Thomas R. Cooper's lineal descendants in which there is any representative living on June 23, 1987, which are his grandchildren, so that the Thomas R. Cooper Part is divided into eleven equal subparts, one of which is to be distributed to each of Thomas R. Cooper's lineal descendants (living on June 23, 1987) who are representatives of such generation?"
 "(e) If the answer to Question (a) is in the affirmative and if, at the time of distribution of the remaining assets of the Thomas R. Cooper Part, no administration with respect to the estate of Thomas R. Cooper, II, and/or the estate of Theresa F. C. O'Donnell has yet been begun, may the plaintiff distribute the other portions of the Thomas R. Cooper Part while retaining the portion attributable to the estate of Thomas R. Cooper, II, and/or the estate of Theresa F. C. O'Donnell in separate trust for the benefit of each such estate, respectively, pending the opening of administration thereon?"
"(f) If the answer to Question (e) is in the affirmative and CT Page 9483 if, within a reasonable time, no administration has been begun with respect to the estate of Thomas R. Cooper, II, and/or the estate of Theresa F. C. O'Donnell by other [p]arties interested therein, may the plaintiff take such steps as may be necessary to cause administration to be opened on such estates (or either of them), and charge the investigation expenses, legal expenses, court fees and other reasonable expenses, of such steps to the portions of the Thomas R. Cooper Part retained in trust by plaintiff for the benefit of each such estate, respectively?"
Defendants Bette C. Scott, Donald N. Cooper and Bruce R. Cooper now move (#124) for summary judgment requesting that the court answer the above questions as follows: "(a) No; (b) Yes; (c) No; (d) Yes; (e) Not applicable; and (f) Not applicable."
The parties agree that there are no genuine issues of material fact; Practice Book 384; and that the questions posed by the plaintiff may be resolved by way of a summary judgment.
In construing the decedent's will our starting point is Hartford National Bank Trust Co. v. Thrall, 184 Conn. 497, 502,440 A.2d 200 (1981), which stated that "The cardinal rule of testamentary construction is the ascertainment and effectuation of the intent of the testator, if that be possible." The court went on to say that "[T]his intention is to be sought in the language used by the testator in the light of the circumstances surrounding and known to him at the time the will was executed." (Citations and quotation marks omitted.) Id. "The quest is to determine the meaning of what the testator said and not to speculate upon what he meant to say." (Citations and quotation marks omitted.) Id. Further, the will should be construed so that all its provisions are harmonized and given effect. Id., 506.
The first question to be answered is whether the "then living lineal descendants" of Thomas R. Cooper who are entitled to participate in the distribution should be determined as of July 1, 1964, when Janet S. Cooper died, or on June 23, 1987, when Elizabeth Jarrett Forbus died. The gift to the "lineal descendants of Thomas R. Cooper" is a class gift; Connecticut Bank Trust Co. v. Brody, 174 Conn. 616, 624-26, 392 A.2d 445 (1978) (gift to class of persons rather than to particular persons is class gift); and the rules governing class gifts apply in this case. Further, use of the words "then living" imposes a requirement of survival on said lineal descendants and, thus, is a condition precedent to CT Page 9484 receipt of the gift. Restatement of Property 250 (1940); 3 Powell on Real Property 328 (1987); Travis v. Wolcottville School Society, 113 Conn. 618, 631-32, 155 A. 904 (1931).
Turning now to the language of the will, it is clear that the trust established for the benefit of Mary A. Cooper and Elizabeth Jarrett Forbus, as set forth in article third, paragraph II, subparagraph (b), terminated on June 23, 1987 when the survivor of the two of them (Elizabeth) died. The will further provides in Section (5) that on the termination of said trust the principal and remaining income should go to persons or classes of persons then living. It is this language, I believe, which controls the distribution of the assets of the trust. Thus, only the lineal descendants of Thomas R. Cooper living on June 23, 1987 are entitled to participate in the distribution.
"The majority rule today, where a limitation is to. . .persons `who survive' or who are `living' or who are described by a similar added word, phrase, or clause and where the limitation fails to designate the time to which these persons must survive, is to place the critical date at the time of termination of all preceding interests." 3 Powell on Real Property 328 (1987). Accord Restatement of Property 251 (1940). The language in Section (5) appears to require that the lineal descendants survive until both the Cooper/Forbus and the Janet Cooper trust have terminated. As mentioned above, no assets of the Cooper/Forbus trust could be distributed until the deaths of both beneficiaries. In fact, it is only at the termination of that trust that it can be determined whether the assets are to be distributed to Carrie Cooper or ultimately to the lineal descendants of Thomas Cooper. On the other hand, if the joint beneficiaries and Carrie Cooper had predeceased Janet Cooper, the lineal descendants would not have been entitled to the assets until Janet's death. Thus, it appears that the testator's intent was to distribute the assets of the Thomas R. Cooper Part to those lineal descendants then living at the time when all preceding interests terminated, that is, on June 23, 1987. This conclusion is in accord with Travis v. Wolcottville School Society, supra, 633, which holds that if it cannot be known until the death of the life tenant who is to take, the gift necessarily vests and takes effect only upon the death of the life tenant. The gift herein cannot vest until the termination of the Cooper/Forbus trust since it is only at that time that it can be determined who is to take. See Belcher v. Phelps, 109 Conn. 7, 13,144 A. 659 (1929) (if future event or time is annexed to substance of gift rather than to time of payment, vesting is postponed and CT Page 9485 does not vest immediately).
This result concurs with the expressed intent of the testator in other paragraphs of his will that his assets are distributable to living persons rather than to the estates of dead persons. If the language of Section (5) were interpreted to mean that the lineal descendants then living on July 1, 1964 are the proper distributees, the result would be to distribute the trust assets to estates of persons not living, since there are at least five lineal descendants who died between 1964 and 1987. Therefore, question "(a)" is answered in the negative, and the answer to question "(b)" is yes.
The next issue is whether the per stirpital division is to be made among Thomas R. Cooper's children, none of whom is now living, or among his grandchildren, among whom there is at least one living representative. "Per stirpes means literally by roots or stock or by representation. Under a stirpital distribution, each deceased member of one generation is represented by his descendants of the next succeeding generation." Hartford National Bank and Trust Co. v. Thrall, supra, 503-04. Once the heads of the respective stirpes are ascertained, the gift is distributed per capita. Id., 504-05.
No Connecticut cases were found to assist in determining whether the heads of the stirpes in this case should be the children of Thomas R. Cooper, all of whom died between 1964 and 1982, or the grandchildren of Thomas. The Restatement, Second, of Property would make the division among the children. It states as follows:
 If a gift is made to a class described as the "issue" or "descendants" of a designated person, or by a similar multigenerational class gift term, in the absence of additional language or circumstances that indicate otherwise,
. . .
 (3) the initial division into shares will be on the basis of the number of class members, whether alive or deceased, in the first generation below the designated person.
Restatement (Second), Property (Donative Transfers) 28.2 (1988). The reason for dividing the gift at the first generation is to "keep the division equal among family lines." Id., comment a.
CT Page 9486 It should also be noted that under Connecticut's intestate statutes, General Statutes 45a-438 and 45a-439, the stirpital division is made at the first generation. See Daniels v. Daniels,115 Conn. 239, 243, 161 A. 94 (1932); Ketchum v. Corse, 65 Conn. 85,89-92, 31 A. 486 (1894); Cook v. Catlin, 25 Conn. 387, 391-92
(1856). See also Restatement (Second), Property, supra, 28.2, statutory note.
Thus, based on the foregoing and in light of no contrary expression by the testator, the assets of the trust should be divided equally among the five children of Thomas R. Cooper as the heads of stirpes, to be distributed per stirpes among the lineal descendants living on June 23, 1987. The answer to question "(c)" then is in the affirmative and to question "(d)" in the negative. Because of the conclusions reached with respect to the other questions, there is no need to answer questions "(e)" and "(f)". To sum up the foregoing, the answers to plaintiff's questions are as follows:
(a) No
(b) Yes
(c) Yes
(d) No
(e) Not applicable
(f) Not applicable
So Ordered.
Dated at Bridgeport, Connecticut, this 19th day of October, 1992.
WILLIAM B. LEWIS, JUDGE